UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| DANIEL J. HALL, | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| *vs.* | ) | Case No. 1:13-cv-00993-JMS-MJD |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| *Defendant*. | ) | |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Daniel Hall applied for a period of disability and disability insurance benefits from the Social Security Administration ("SSA") on February 25, 2010. After a series of administrative proceedings and appeals, including a hearing in August 2011 before Administrative Law Judge ("ALJ") Blanca B. de la Torre, the ALJ determined that Mr. Hall was not entitled to benefits. In April 2013, the Appeals Council denied Mr. Hall's request for a review of the ALJ's decision, rendering that decision the final decision of the Defendant, Commissioner of the SSA ("the Commissioner"), for the purposes of judicial review. *See* 20 C.F.R. § 404.981. Mr. Hall then filed this action under 42 U.S.C. § 405(g), requesting that the Court review the Commissioner's denial.

## I.
### STANDARD OF REVIEW

The Court's role in this action is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted) (internal quotation marks omitted). Because the

ALJ "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (citations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the Court *must* affirm the denial of benefits. Otherwise the Court will remand the matter back to the SSA for further consideration; only in rare cases can the Court actually order an award of benefits. *See Briscoe v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005).

To evaluate a disability claim, an ALJ must use the following five-step inquiry:

> (1) [is] the claimant . . . currently employed, (2) [does] the claimant ha[ve] a severe impairment, (3) [is] the claimant's impairment . . . one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, . . . can [he] perform h[is] past relevant work, and (5) is the claimant . . . capable of performing any work in the national economy[?]

*Dixon v. Massanari*, 270 F.3d 1171, 1176 (7th Cir. 2001) (citations omitted). After Step Three, but before Step Four, the ALJ must determine a claimant's residual functional capacity ("RFC"), which represents the claimant's physical and mental abilities considering all of the claimant's impairments. The ALJ uses the RFC at Step Four to determine whether the claimant can perform his own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e).

## II.
### BACKGROUND

Mr. Hall was thirty-three years old at the time of his alleged disability onset date of March 9, 2009. [*See* Filing No. 10-2, at ECF p. 24.] He has a high school education, [Filing No. 10-2, at ECF p. 24], and has past work experience as an air framer, electrician, and fast-food

worker, [Filing No. 10-2, at ECF p. 23].  Mr. Hall contends he is disabled due to a variety of impairments, which will be discussed as necessary below.  He was last insured for purposes of disability on June 30, 2010.  [Filing No. 10-2, at ECF p. 16.]

Using the five-step sequential evaluation set forth by the SSA, the ALJ issued an opinion on March 8, 2012.  [Filing No. 10-2, at ECF p. 25.]  The ALJ found as follows:

- At Step One, the ALJ found that Mr. Hall did not engage in substantial gainful activity[1] since the alleged onset date of his disability, March 9, 2009.  [Filing No. 10-2, at ECF p. 16.]

- At Step Two, the ALJ found that Mr. Hall suffered from the following severe impairments: obesity, a tear of the medial meniscus in the right knee, and a partial tearing of ligaments in the right ankle.  [Filing No. 10-2, at ECF p. 16.]  But the ALJ found that Mr. Hall failed to demonstrate a medically determinable impairment of tinnitus or partial hearing loss.  [Filing No. 10-2, at ECF pp. 16-17.]  And, although the ALJ found a medically determinable impairment of hypothyroidism, the ALJ found that the impairment was not severe.  [Filing No. 10-2, at ECF p. 17.]

- At Step Three, the ALJ found that Mr. Hall's severe impairments did not meet or medically equal one of the listed impairments.  [Filing No. 10-2, at ECF p. 17.]  The ALJ concluded that Mr. Hall had the RFC to perform a range of sedentary work.[2]  [Filing No. 10-2, at ECF pp. 17-18.]  The ALJ explained Mr. Hall's specific limitations as follows: "[H]e can lift, carry, push and pull 10 pounds occasionally and under 10 pounds frequently; sit for one hour at a time, and a total of eight hours in the workday; and stand and walk in combination for one hour at a time, and a total of two hours in combination in the workday.  He cannot climb ladders, ropes, or scaffolds but can occasionally climb ramps and stairs.  He can occasionally balance, stoop and crouch, but should never kneel or crawl.  He should not be exposed to concentrated wetness, humidity, excessive noise, any form of hazards, or slippery and uneven terrain."  [Filing No. 10-2, at ECF pp. 17-18.]

- At Step Four, the ALJ found that Mr. Hall is unable to perform any past relevant work as an air framer, electrician, or fast-food worker.  [Filing No. 10-2, at ECF p. 23.]

---

[1] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized).  20 C.F.R. §§ 404.1572(a), 416.972(a).

[2] Sedentary work is defined as work that "involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools."  20 C.F.R. § 404.1567(a).

- At Step Five, the ALJ found that Mr. Hall could perform other jobs existing in the national economy such as general office clerk, packer, or ticket checker. [Filing No. 10-2, at ECF p. 24.]

Based on these findings, the ALJ concluded that Mr. Hall was not disabled and thus not entitled to a period of disability and disability insurance benefits. [Filing No. 10-2, at ECF p. 25.] Mr. Hall sought review of the ALJ's decision from the Appeals Council. [Filing No. 10-2, at ECF pp. 7-10.] The Appeals Council denied his request for review on April 30, 2013. [Filing No. 10-2, at ECF pp. 2-4.] Mr. Hall's appeal from that decision is now before this Court.

### III.
### DISCUSSION

Mr. Hall raises three issues on appeal. [Filing No. 12, at ECF p. 7.] He argues that the ALJ (1) ignored critical evidence indicative of disability, [Filing No. 12, at ECF pp. 10-12]; (2) erroneously compared childcare to full-time work, [Filing No. 12, at ECF pp. 13-14]; and (3) failed to properly incorporate Mr. Hall's treating physician's opinion "under the full breadth of SSR 96-2p," [Filing No. 12, at ECF pp. 15-17]. The Commissioner challenges each of these arguments. [Filing No. 19, at ECF pp. 3-16.] The Court will address each issue in turn.

**A.  The ALJ did not ignore critical evidence.**

Mr. Hall argues that the ALJ ignored critical lines of evidence by (1) selectively culling evidence from the record, (2) improperly weighing the Department of Veteran Affairs' ("VA") disability determination, and (3) failing to consider Mr. Hall's diagnosis of fibromyalgia. [Filing No. 12, at ECF pp. 10-12.] The Commissioner argues that the ALJ (1) considered all relevant evidence, (2) reasonably considered the VA's determination, and (3) properly found Mr. Hall's diagnosis of fibromyalgia irrelevant. [Filing No. 19, at ECF pp. 2-7.]

### 1.  The ALJ did not selectively cull from the record to support her findings.

Mr. Hall argues generally that the ALJ ignored critical lines of evidence by discussing only the evidence that favored her conclusion.  [Filing No. 12, at ECF p. 12.]  The Commissioner disagrees.  [Filing No. 19, at ECF p. 3.]

An ALJ must consider all relevant evidence in making a disability determination, *see* 20 C.F.R. § 404.1520(a)(2), and therefore is not permitted to select and discuss only evidence that favors her conclusion, *Diaz v. Chater*, 55 F.3d 300, 307 (7th Cir. 1995).  This requires an ALJ to "confront evidence that does not support [her] conclusion and explain why it was rejected." *Kasarky v. Barnhart*, 335 F.3d 539, 543 (7th Cir. 2003).  An ALJ, however, need not "'provide a complete written evaluation of every piece of testimony and evidence.'"  *Shideler v. Astrue*, 688 F.3d 306, 310 (7th Cir. 2012) (quoting *Schmidt v. Barnhart*, 395 F.3d 737, 744 (7th Cir. 2005)).

The ALJ did not selectively cull from the record to support her findings.  The ALJ outlined and applied the SSA's five-step sequential evaluation process.  [Filing No. 10-2, at ECF pp. 15-16.]  At each step of the process, the ALJ stated her findings and explained her reasoning.  [*See generally* Filing No. 10-2, at ECF pp. 11-25.]  At Step Two, for example, the ALJ found that Mr. Hall had severe impairments of obesity, a tear of his medial meniscus in his right knee, and a partial tearing of ligaments in his right ankle.  [Filing No. 10-2, at ECF p. 16.]  The ALJ did not find that Mr. Hall had severe impairments of tinnitus, partial hearing loss, or hypothyroidism, [Filing No. 10-2, at ECF pp. 16-17], despite Mr. Hall's allegations to the contrary, [Filing No. 10-6, at ECF p. 6; Filing No. 10-7, at ECF p. 102].  Rather than excluding Mr. Hall's allegations, the ALJ explained why his evidence failed to demonstrate medically determinable severe impairments:  Mr. Hall's allegations of tinnitus and partial hearing loss were not medically determinable, [Filing No. 10-2 at ECF pp. 16-17], and his allegation of

hypothyroidism—although medically determinable—was not considered severe, [Filing No. 10-2, at ECF p. 17].  Despite finding Mr. Hall's allegation of tinnitus not medically determinable, the ALJ accounted for this alleged impairment in her RFC finding, limiting Mr. Hall's exposure to excessive noise.  [Filing No. 10-2, at ECF p. 21.]

Notably, other than the evidence regarding Mr. Hall's fibromyalgia diagnosis discussed in detail below, Mr. Hall does not point the Court to any other specific lines of evidence the ALJ allegedly ignored.  [*See* Filing No. 12, at ECF p. 12.]  And as the above evidence and example demonstrates, it is apparent from the record that the ALJ considered the relevant evidence and explained why she rejected certain evidence.  Accordingly, Mr. Hall is incorrect that the ALJ selectively cited evidence that supported her position.

### 2.    *The ALJ properly weighed the VA's disability determination.*

Mr. Hall argues that the ALJ improperly weighed the VA's disability determination for two reasons.  First, Mr. Hall argues that the ALJ cited an incorrect disability rating of seventy percent.  [Filing No. 12, at ECF p. 10.]  According to Mr. Hall, the VA paid him at the one hundred percent disability rating and considered him to be totally and permanently disabled.  [Filing No. 12, at ECF p. 10.]  Second, Mr. Hall argues that the VA's determination should have been "strongly considered."  [Filing No. 12, at ECF p. 12.]  The Commissioner contends that the ALJ reasonably considered the VA's disability determination.  [Filing No. 19, at ECF pp. 3-7.]  Specifically, the Commissioner argues that (1) Mr. Hall introduced evidence of a seventy percent disability rating himself, [Filing No. 19, at ECF p. 4]; (2) Mr. Hall failed to provide evidence of a one hundred percent disability rating, [Filing No. 19, at ECF p. 4]; (3) Mr. Hall may not introduce new evidence unless it is "new" and "material," [Filing No. 19, at ECF pp. 4-5]; and

(4) the ALJ provided sufficient explanation for the low weight she assigned to the VA's finding, [Filing No. 19, at ECF pp. 5-7].

An ALJ must consider disability determinations by other governmental agencies. 20 C.F.R. § 416.912(b)(5). But these determinations do not bind the SSA. 20 C.F.R. § 416.904; *Clifford v. Apfel*, 227 F.3d 863, 874 (7th Cir. 2000). The Seventh Circuit has held that an ALJ should give a VA's disability determination "some weight." *Allord v. Barnhart*, 455 F.3d 818, 820 (7th Cir. 2000). This is because the VA requires less proof of disability than the SSA. *Id.* (comparing *Ortiz v. Principi*, 274 F.3d 1361, 1364 (Fed. Cir. 2001), with *Jones ex rel. Jones v. Chater*, 101 F.3d 509, 512 (7th Cir. 1996)). If an ALJ gives a VA's determination less than some weight, then she must provide a detailed explanation why. *Moore v. Colvin*, 2013 WL 4584618, *4 (S.D. Ind. 2013) (citing *Allord*, 455 F.3d at 820).

The ALJ properly weighed the VA's disability determination for two reasons. First, the ALJ applied the correct legal standard to the VA's determination by giving it some weight. [Filing No. 10-2, at ECF p. 23.] While the ALJ acknowledged that the VA's determination was based on Mr. Hall's medical records, the ALJ also acknowledged that the VA's determination was based on a different definition of "disability." [Filing No. 10-2, at ECF p. 23.] Reasoning that the SSA was not bound to the VA's determination, the ALJ decided to give the determination "some weight" and limited Mr. Hall to a "very modest [RFC]". [Filing No. 10-2, at ECF p. 23.] In short, the ALJ's decision followed the legal standards set forth in *Allord*.

Second, substantial evidence supports the ALJ's conclusion that Mr. Hall had a seventy percent disability rating from the VA. [Filing No. 10-2, at ECF p. 23.] Mr. Hall takes issue with that finding, arguing that the VA considers him "totally . . . disabled" and "unemployable." [Filing No. 12, at ECF p. 10.] To support this argument, Mr. Hall references a letter from the

VA, which allegedly confirms his one hundred percent disability rating. [Filing No. 12, at ECF p. 10.] Unfortunately, neither the Commissioner nor this Court could locate this letter. [*See generally* Filing No. 12, at ECF pp. 1-19; Filing No. 19, at ECF p. 4.][3] Moreover, Mr. Hall himself—at the prompting of his attorney—testified to having a seventy percent disability rating from the VA. [Filing No. 10-2, at ECF p. 54 ("And you are [sic] currently have a 70 percent service connected disability and also a determination by the VA that you have what's called individual unemployability.").] Other evidence in the record also supports a finding of a seventy percent disability rating. [Filing No. 10-7, at ECF p. 24; Filing No. 10-7, at ECF p. 27 (supporting only a sixty percent disability rating).] While the record has some evidence of a one hundred percent disability rating, this Court need not resolve whether Mr. Hall's disability rating was sixty, seventy, or one hundred percent. Rather, the Court need only resolve whether the ALJ's finding of a seventy percent disability rating was supported by substantial evidence—that is, "such relevant evidence that as a reasonable mind might accept as adequate to support a conclusion." *Barnett*, 381 F.3d at 668 (citation omitted) (internal quotation marks omitted).

---

[3] Even if this Mr. Hall's supplemental letter could be located, this Court would not consider it. The Court's review is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett*, 381 F.3d at 668. An ALJ "cannot be faulted for having failed to weigh evidence never presented to [her]." *Eads v. Sec'y of the Dep't of Health & Human Servs.*, 983 F.2d 815, 817 (7th Cir. 1993). Further, additional evidence may only be considered if the claimant shows that "there is new, material evidence, and good cause for failing to incorporate the evidence in a prior proceeding." *Stepro v. Astrue*, 2012 WL 967089, *3 (S.D. Ind. 2012) (citing *Waite v. Bowen*, 819 F.2d 1356, 1361 (7th Cir. 1987)). Evidence must be "new" in the sense that it did not exist or was not available at the time of the administrative proceeding. *Stepro*, 2012 WL 967089, at *3. Evidence must be "material" in the sense that there is a possibility that it would have changed the outcome of the Commissioner's decision. *Id.* Good cause requires a "sufficient reason" for not incorporating the evidence in the first place. *Sample v. Shalala*, 999 F.2d 1138, 1144 (7th Cir. 1993). Here, Mr. Hall has not shown the letter was "new," nor has he attempted to show good cause for not admitting it in the first place. *See* *Waite*, 819 F.2d at 1361-62.

Based on Mr. Hall's testimony, his attorney's own prompt, and the record evidence, this Court finds that substantial evidence supports the ALJ's finding.

Accordingly, no error exists regarding the ALJ's treatment of the VA's disability determination.

### 3. The ALJ considered Mr. Hall's diagnosis of fibromyalgia as required.

In one sentence, Mr. Hall argues that the ALJ did not mention Mr. Hall's diagnosis of fibromyalgia, "despite referring to that same record." [Filing No. 12, at ECF p. 12.] The Commissioner contends that Mr. Hall's fibromyalgia diagnosis was not relevant to the ALJ's decision because the diagnosis occurred after the expiration of Mr. Hall's insured status. [Filing No. 19, at ECF p. 7.] According to the Commissioner, Mr. Hall made no attempt to relate this diagnosis back to the period in which he was insured. [Filing No. 19, at ECF p. 7.]

An ALJ must consider "all evidence in the administrative record," including evidence arising after the date last insured. *Doherty v. Astrue*, 2012 WL 4470264, *5 (S.D. Ind. 2012) (citing *Eichstadt v. Astrue*, 534 F.3d 663, 667 (7th Cir. 2008); *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984)) (quotation marks omitted). In *Halvorsen*, for example, the disability claimant argued that the ALJ refused to consider evidence from after 1965 in deciding whether the claimant was disabled in 1965. *Halvorsen*, 743 F.2d at 1225. The Seventh Circuit found that that ALJ "gave little, if any, consideration to plaintiff's post-1965 medical records when [the ALJ] determined that plaintiff was not disabled as of September 30, 1965." *Id.* at 1225-26. Reasoning that "evidence must not be viewed in isolation," the Seventh Circuit held that the ALJ's failure to consider the post-1965 records mandated reversal. *Id.* at 1226.

In *Eichstadt*, however, the Seventh Circuit addressed a similar question in a different manner. *See* 534 F.3d at 667. There, the disability claimant argued that the ALJ committed

reversible error by refusing to consider evidence that arose after the claimant's date last insured. *Id.* The Seventh Circuit disagreed: "[I]t is evident from the ALJ's decision that she did not 'fail to consider' this evidence, but instead she examined it as required and subsequently concluded that the evidence was irrelevant, because it did not address the correct time period." *Id.* The Seventh Circuit supported its conclusion by highlighting that the ALJ had (1) assigned the post-dated evidence "no weight" and (2) provided additional reasons for discounting the post-dated evidence. *Id.* Thus, although an ALJ must consider evidence arising after the date last insured, it can discount such evidence when appropriate. *Id.*; *see Doherty*, 2012 WL 4470264, at *5 n.2.[4]

A finding of disability requires relevant evidence that the claimant is disabled before the last date insured. *See, e.g.*, 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. § 404.320(b)(2); *Shideler*, 688 F.3d at 311 ("[W]hatever condition the claimant may be in at his hearing, the claimant must establish that he was disabled before the expiration of his insured status . . . to be eligible for disability insurance benefits."). For example, the Seventh Circuit has addressed whether a disability claimant—who "appear[ed] to be" disabled at her hearing—was entitled to benefits. *Martinez v. Astrue*, 630 F.3d 693, 699 (7th Cir. 2011). The Seventh Circuit found that she was not entitled to benefits, reasoning that she had "disability coverage only until the end of 2003; if she was not disabled by then, she cannot obtain benefits even if she is disabled now." *Id.* (citing 42 U.S.C. § 423(c); 20 C.F.R. § 404.140).

---

[4] The Commissioner cites *Eichstadt* in support of her argument that the claimant's "fibromyalgia diagnosis was not relevant to the ALJ's decision." [Filing No. 19, at ECF p. 7.] "*Eichstadt* provides no support for an ALJ's refusal to consider evidence in the administrative record; in fact, it says the opposite." *Doherty*, 2012 WL 4470264, at *5 n.2. As explained above, *Eichstadt* stands for the proposition that an ALJ must consider all evidence in the administrative record. *Eichstadt*, 534 F.3d at 667. This is at least the second time the Commissioner has made this error. *See Doherty*, 2012 WL 4470264, at *5 n.2.

Mr. Hall was last insured on June 30, 2010. [Filing No. 10-2, at ECF p. 16.] On September 30, 2010—three months after Mr. Hall's date last insured—Mr. Hall's treating physician Dr. Randy Brown diagnosed Mr. Hall with fibromyalgia. [Filing No. 10-8, at ECF p. 63.] The ALJ did not specifically mention this diagnosis in her decision. [*See* Filing No. 10-2, at ECF pp. 14-25.] But the ALJ did not refuse to consider Dr. Brown's diagnosis either. Rather, as in *Eichstadt*, the ALJ decided that Dr. Brown's medical opinion was only entitled to "little weight." [Filing No. 10-2, at ECF p. 23.] After "closely review[ing]" Dr. Brown's opinion, the ALJ discounted the opinion because (1) the treating relationship was short, (2) the medical opinion was not well supported, and (3) the medical opinion was inconsistent with other medical opinions. [Filing No. 10-2, at ECF p. 23.] Rather than viewing the evidence in isolation, as in *Halvorsen*, the ALJ in this case examined Dr. Brown's opinion and concluded that it was entitled to little weight. [Filing No. 10-2, at ECF p. 23.] The ALJ was not required to "provide a complete written evaluation of every piece of testimony and evidence," *Schmidt*, 395 F.3d at 744, especially when the evidence at issue was within a medical source that the ALJ decided was entitled to little weight.

Even if the ALJ committed an error by not expressly considering Mr. Hall's diagnosis of fibromyalgia, this error was harmless. Dr. Brown diagnosed Mr. Hall with fibromyalgia on September 30, 2010—three months after Mr. Hall's date last insured. [Filing No. 10-8, at ECF p. 63.] Mr. Hall has not contended that this diagnosis relates back to before his date last insured. [*See* Filing No. 12, at ECF pp. 10-12.] Nor does the medical evidence in the record support such an inference. [*See* Filing No. 10-8, at ECF pp. 58-88.] Thus, even if Mr. Hall suffered from fibromyalgia in September 2010, this does not demonstrate that Mr. Hall suffered from it prior to the date he was last insured. Therefore, like the plaintiff in *Martinez* who was not entitled to

benefits because she was not disabled before her last date insured, *see* 630 F.3d at 699, Mr. Hall's fibromyalgia diagnosis has no bearing on his disability determination.

In sum, the ALJ did not ignore critical evidence of disability in any of the three ways identified by Mr. Hall.

### B. The ALJ did not erroneously compare childcare to full-time work.

Mr. Hall argues that the ALJ, in making her RFC finding, erroneously compared childcare to full-time work. [Filing No. 12, at ECF p. 13-14.] According to Mr. Hall, the ALJ's finding is contrary to both the facts and the law. [Filing No. 12, at ECF p. 13-14.] Challenging Mr. Hall's arguments, the Commissioner contends that the ALJ properly considered the relevant evidence regarding Mr. Hall's childcare work. [Filing No. 19, at ECF pp. 7-11.]

#### 1. The ALJ's finding was not contrary to the facts.

Mr. Hall first contends that the ALJ overstated the childcare work he performs. Specifically, Mr. Hall argues that the ALJ's finding—that Mr. Hall "spen[t] a significant amount of time at home alone, carrying for a young infant all the time"—did not account for the substantial assistance Mr. Hall received from his father. [Filing No. 12, at ECF p. 13 (quoting Filing No. 10-2, at ECF p. 18).] The Commissioner argues that "substantial evidence" supported the ALJ's finding. [Filing No. 19, at ECF p. 7.]

An ALJ's finding must be supported by "substantial evidence." *Barnett*, 381 F.3d at 668. This requires "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (citation omitted) (internal quotation marks omitted). Because an ALJ is in the "best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this Court will only overturn an ALJ's factual finding if it is "patently wrong." *Prochaska*, 454 F.3d at 738 (citation omitted) (internal quotation marks omitted).

Here, the ALJ's finding was supported by substantial evidence.  Mr. Hall testified that his wife works three days a week, that he cares for the children when she is at work, and that his father helps care for the children when Mr. Hall is in pain—which is at least six days a month. [Filing No. 10-2, at ECF pp. 47-52.]  Mr. Hall argues that the "simple extrapolation from this testimony is that Mrs. Hall works approximately 12 days per month, and that therefore Mr. Hall is left to care for his six month old 12 days per month, of which he testified his father would help him at least half of the time."  [Filing No. 12, at ECF p. 13.]  Mr. Hall, thus, implicitly argues that—contrary to the ALJ's finding—caring for his children for six days a month was not a "significant amount of time at home alone."  [Filing No. 10-2, at ECF p. 18.]

The ALJ summarized Mr. Hall's testimony and concluded that Mr. Hall was "able to spend a significant amount of time at home alone" caring for his children.  [Filing No. 10-2, at ECF p. 18.]  The ALJ explicitly noted and accounted for the childcare assistance provided by Mr. Hall's father.  [Filing No. 10-2, at ECF p. 18.]  A reasonable mind could conclude that caring for one's children six days a month alone is a "significant amount of time."  And even if six days a month is not a "significant" amount of time, this Court cannot conclude the ALJ's finding is patently wrong.

## 2.  *The ALJ's finding was not contrary to the law.*

Mr. Hall also argues that the ALJ's casual equating of household work to full-time work was improper and grounds for remand.  [Filing No. 12, at ECF p. 13-14 (citing *Gentle v. Barnhart*, 430 F.3d 865, 867-68 (7th Cir. 2005)).]  The Commissioner disagrees, arguing that Mr. Hall's argument improperly focuses "solely on the ALJ's considerations of [Mr. Hall's] daily activities," and thus erroneously isolates the "ALJ's findings to contend that the ALJ

wrongly equated [Mr. Hall's] childcare abilities with the ability to perform full-time work." [Filing No. 19, at ECF p. 8.]

An RFC finding is based on all relevant medical evidence in a claimant's record. 20 C.F.R. § 404.1520(e). Where a claimant's symptoms suggest a greater impairment than can be shown by the objective medical evidence, an ALJ must make a credibility determination. *Id.* § 404.1529(c)(3). In making this determination, an ALJ will consider (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of one's pain; (3) precipitating and aggravating factors; (4) side effects of medication; (5) treatment a claimant has received for pain; (6) any measures a claimant has taken to relieve pain, including lying on one's back; and (7) other factors concerning a claimant's functional limitations. *Id.* § 404.1529(c)(3)(i)-(vii).

In evaluating these factors, an ALJ must not give excessive weight to one factor, such as the claimant's daily activities *See* *Gentle*, 430 F.3d at 867. In *Gentle*, the ALJ found that the claimant could work in a full-time, non-sedentary job that "requires standing much or most of the time" because the claimant was able to "care for her personal needs and those of her two small children." *Id.* (internal quotation marks omitted). The Seventh Circuit reversed the ALJ's decision. *Id.* at 867-68. First, the Seventh Circuit criticized the ALJ's "casual equating of household work to work in the labor market." *Id.* at 867. Second, the Seventh Circuit held that the ALJ impermissibly attached "great significance" to the daily-activities factor and "failed to consider [the claimant's] disabilities in combination." *Id.* at 868.

*Gentle* does not, however, foreclose any and all consideration of the claimant's childcare work. *See* *Begley v. Astrue*, 2011 WL 3739339, at *3 (S.D. Ind. 2011). In *Begley*, the claimant—relying on *Gentle*—argued that the ALJ's "casual equation of daily activities with the ability to sustain full-time work" was troubling. *Id.* This argument was rejected on three

grounds. *Id.* First, the claimant in *Begley* and the claimant in *Gentle* were not "similarly situated plaintiff[s]" because the claimant in *Begley* could lift ten pounds frequently whereas the claimant in *Gentle* could not. *Id.* Second, in *Begley* and unlike in *Gentle*, the ALJ did not give "excessive weight to activities of daily living," but rather "conducted a thorough review" of the other factors. *Id.* And third, the ALJ in *Begley* accepted the claimant's allegations that his symptoms limited his RFC to a "moderate" degree, despite evidence that he was only limited to a "mild" degree. *Id.* Because of these factors, the ALJ's decision was affirmed; if anything, the ALJ "was generous in his analysis of [the claimant's] daily activities." *Id.*

Although the cases are not identical, the Court finds *Begley*'s distinguishing of *Gentle* persuasive and similarly applicable here. *See Brown v. Astrue*, 2011 WL 5102276, *10-11 (N.D. Ind. 2011) (relying on *Begley* to distinguish *Gentle*). First and most importantly, the ALJ here properly considered all of the relevant factors. In making Mr. Hall's credibility determination, the ALJ considered Mr. Hall's (1) daily activities, [Filing No. 10-2, at ECP p. 18]; (2) location, duration, frequency, and intensity of pain, [Filing No. 10-2, at ECF p. 19]; (3) precipitating and aggravating factors, [Filing No. 10-2, at ECF p. 22]; (4) side effects from medication, [Filing No. 10-2, at ECF p. 22]; (5) treatment for relieving pain, [Filing No. 10-2, at ECF p. 22]; (6) measures other than treatment for relieving pain, [Filing No. 10-2, at ECF p. 22]; and (7) other factors concerning functional limitations, [Filing No. 10-2, at ECF p. 22]. Therefore, unlike in *Gentle*, the ALJ did not attach undue significance to Mr. Hall's daily activities and fail to consider the other factors in combination. Rather, the ALJ's analysis of Mr. Hall's daily activities was one paragraph of a six-page discussion of Mr. Hall's functional limitations. [*See* Filing No. 10-2, at ECF pp. 17-23.]

Second, the other factors on which *Begley* relied in distinguishing *Gentle* are present here. Like the claimant in *Begley*, Mr. Hall is not similarly situated to the claimant in *Gentle*, who had a lower functional capacity (*i.e.*, unable to lift ten pounds frequently) but was being considered for non-sedentary work. *See Gentle*, 430 F.3d at 867. Mr. Hall, by contrast, had a higher functional capacity (*i.e.*, able to lift, carry, push, and pull ten pounds occasionally) and was being considered for sedentary work. [Filing No. 10-2, at ECF p. 17.] Moreover, as in *Begley*, the ALJ gave Mr. Hall a "generous" RFC by relying on Mr. Hall's subjective complaints of pain to reduce his RFC to "sedentary"—despite State agency medical evidence supporting a range of "light exertional level work." [Filing No. 10-2, at ECF p. 23 ("However, I reduced the claimant's exertional level to only sedentary and further reduced his sitting, standing, and walking at one time to account for the claimant's subjective complaints.").]

For all of these reasons, the ALJ did not inappropriately consider Mr. Hall's childcare work, and *Gentle* does not require reversal in this case.

## C. The ALJ did not fail to properly incorporate Mr. Hall's treating physician's opinion.

According to Mr. Hall, "the ALJ failed to properly incorporate Mr. Hall's treating physician opinion under the full breadth of SSR 96-2p." [Filing No. 12, at ECF p. 15.] Specifically, Mr. Hall argues that the ALJ (1) should have given Mr. Hall's treating physician's opinion controlling weight, [Filing No. 12, at ECF pp. 15-16]; (2) inadequately explained why the treating physician's opinion was only given little weight, [Filing No. 12, at ECF pp. 15-16]; and (3) cannot disbelieve Mr. Hall's testimony solely because it was in excess of the objective medical evidence, [Filing No. 12, at ECF p. 17]. The Commissioner opposes these arguments, contending that the ALJ reasonably weighed the medical opinions and evidence. [Filing No. 19, at ECF pp. 11-16.] The Court will address each argument in turn.

## 1. Mr. Hall's treating physician's opinion was not entitled to controlling weight.

Mr. Hall argues that his treating physician's opinion should have been given controlling weight. [Filing No. 12, at ECF pp. 15-16.] The Commissioner disagrees, arguing that the ALJ properly discounted Mr. Hall's treating physician's opinion because the opinion was (1) based on limited contact with Mr. Hall, [Filing No. 19, at ECF p. 12]; (2) not well supported by the treating physician's own treatment notes or the objective medical evidence, [Filing No. 19, at ECF p. 12]; and (3) inconsistent with the other qualified medical opinions, [Filing No. 19, at ECF pp. 12-13].

An ALJ must give a treating physician's opinion controlling weight if the opinion (1) is well-supported by "medically acceptable" clinical and laboratory diagnostic techniques, and (2) is "not inconsistent" with substantial evidence in the record. 20 C.F.R. § 404.1527(c)(2); *Schaaf v. Astrue*, 602 F.3d 869, 875 (7th Cir. 2010). "Medically acceptable" means that the medical source used techniques "in accordance with the medical standards that are generally accepted within the medical community to establish the existence and severity of an impairment." SSR 96-2P, 1996 WL 374188, *3. "Not inconsistent" does not mean that the treating physician's opinion is supported directly by all other evidence. *Id.* Rather, it means that "there is no substantial evidence in the case record that contradicts or conflicts with the opinion." *Id.* An "obvious inconsistency," for example, exists between the treating physician's opinion "and other substantial evidence" when "two medical sources provide inconsistent medical opinions about the same issue." *Id.*

The ALJ applied the appropriate standards in assessing whether Mr. Hall's treating physician's opinion was entitled to controlling weight. First, the ALJ found that the treating physician's opinion was "not well supported" by objective medical evidence, the treating

physician's own notes, or other examining sources. [Filing No. 10-2, at ECF p. 23.] Second, the ALJ found that the treating physician's opinion was "inconsistent" with the opinions of the other "medical consultants, the consultative examiner, and the claimant's prior reports of his activities of daily living." [Filing No. 10-2, at ECF p. 23.] Mr. Hall does not explain to the Court why either of these two findings was unsupported by substantial evidence or otherwise improper. Therefore, because the ALJ appropriately found that the treating physician's opinion was not "well supported" and "inconsistent" with other substantial evidence, the ALJ properly found that the treating physician's opinion was not entitled to controlling weight. [Filing No. 10-2, at ECF p. 23.]

2. **The ALJ gave good reasons for discounting the treating physician's opinion.**

Relatedly, Mr. Hall argues that the ALJ did not adequately explain why Mr. Hall's treating physician's opinion was only given little weight. [Filing No. 12, at ECF pp. 15-16.] Specifically, Mr. Hall argues that the ALJ must (1) address medical source statements function-by-function;[5] (2) explain why any medical opinions were not adopted; and (3) explain how any material inconsistencies between medical opinions were resolved. [Filing No. 12, at ECF pp. 16-17.] According to the Commissioner, however, the ALJ properly performed a function-by-function assessment of Mr. Hall's RFC and provided detailed reasoning for each of the functional limitations in her finding, exceeding regulatory requirements. [Filing No. 19, at ECF p. 14.]

---

[5] Medical source statements do not need to be treated function-by-function. *See Knox v. Astrue, 327 F. App'x 652, 656 (7th Cir. 2009)* ("[T]he expression of a claimant's RFC need not be articulated function-by-function; a narrative discussion of a claimant's symptoms and medical source opinions is sufficient."). Therefore, on this point, Mr. Hall's argument fails.

If an ALJ does not give a treating physician's opinion controlling weight, the ALJ must give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(c)(2). First, this requires an ALJ to consider a number of factors to determine the weight given to the opinion. *Id.* These factors include the (1) length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) supportability; (4) consistency; (5) specialization; and (6) other factors. *Id. §* 404.1527(c)(2)-(6). And second, when the ALJ's decision is a denial, the ALJ must provide "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." SSR 96-2P, 1996 WL 374188, at *5. "Failure to provide good reasons for discrediting a treating physician's opinion is grounds for remand." *Flores v. Massanari*, 19 F. App'x 393, 402 (7th Cir. 2001).

The ALJ gave good reasons for discounting the treating physician's opinion. After reviewing the treating physician's opinion, the ALJ determined that the opinion was entitled to "little weight." [Filing No. 10-2, at ECF p. 23.] The ALJ found that the treating physician's opinion (1) failed to establish a treating relationship of a nature, duration, length, and frequency to merit controlling weight; (2) was not well supported by the objective medical evidence; and (3) was inconsistent with other medical sources. [Filing No. 10-2, at ECF p. 23.] The ALJ also supported each of these findings with evidence from the case record. [*See* Filing No. 10-2, at ECF p. 23.] For example, the ALJ supported her finding that a sufficiently lengthy treatment relationship did not exist by citing Mr. Hall's own testimony and the treating physician's own records. [*See, e.g.,* Filing No. 10-2, at ECF p. 23.] Mr. Hall does not specifically explain what

about the ALJ's rationale was misplaced, let alone unsupported by substantial evidence, other than asserting that it was so, which is of course insufficient to mandate reversal.

Accordingly, because the ALJ gave good reasons for discounting the treating physician's opinion and supported these reasons with evidence from the record, the ALJ did not fail in her duty "to provide good reasons for discrediting a treating physician's opinion." *Flores*, 19 F. App'x at 402.

### 3.    *The ALJ did not discredit Mr. Hall's testimony solely because it was in excess of the objective medical testimony.*

Mr. Hall argues that the ALJ cannot discredit his testimony "solely because it seems in excess of the 'objective' medical testimony." [Filing No. 12, at ECF p. 17 (citation omitted).] According to Mr. Hall, the "etiology of pain is not so well understood, or people's pain thresholds so uniform, that the severity of pain experience by a given individual can be 'read off' from a medical report." [Filing No. 12, at ECF p. 17.] The Commissioner contends that the ALJ addressed Mr. Hall's subjective pain in an "extensive five-page analysis." [Filing No. 19, at ECF pp. 15-16.]

An ALJ may not disbelieve a claimant's testimony solely because it seems in excess of objective medical testimony. *Schmidt*, 395 F.3d at 746-47. Rather, when symptoms suggest a greater impairment than can be shown by objective medical evidence alone, an ALJ must "carefully consider" any other information a claimant may submit about her symptoms. 20 C.F.R. § 404.1529(c)(3). Relevant factors in an ALJ's consideration include (i) the claimant's daily activities; (ii) the location, duration, frequency, and intensity of pain; (iii) precipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication a claimant has taken to alleviate pain; (v) treatment, other than medication, a claimant has received to relieve pain; (vi) any measures a claimant has taken to relieve pain, such as lying on one's

back or sleeping; and (vii) other factors concerning pain.  *Id.* § 404.1529(c)(3)(i)-(vii).  Pain is determined to diminish a claimant's capacity to work to the extent it "can reasonably be accepted as consistent with objective medical evidence and other evidence."  *Id.* § 404.1529(c)(4).

The ALJ did not disbelieve Mr. Hall's testimony solely because it was in excess of the objective medical testimony.  The ALJ began his RFC analysis by acknowledging Mr. Hall's subjective allegations of pain.  [Filing No. 10-2, at ECF p. 18.]  After summarizing Mr. Hall's allegations, the ALJ considered them "in light of the totality of the evidence."  [Filing No. 10-2, at ECF p. 18.]  Specifically, the ALJ considered (1) Mr. Hall's "activities of daily living," [Filing No. 10-2, at ECF p. 18]; (2) the "location, frequency, and intensity" of Mr. Hall's pain, [Filing No. 10-2, at ECF pp. 19-22]; (3) "factors that precipitate and aggravate" Mr. Hall's symptoms, [Filing No. 10-2, at ECF p. 22]; (4) the "type, dosage, effectiveness, and side effects of any medication" Mr. Hall takes, [Filing No. 10-2, at ECF p. 22]; (5) "any measures other than treatment [Mr. Hall] uses or has used to relieve symptoms," [Filing No. 10-2, at ECF p. 22]; and (6) "any other factors concerning [Mr. Hall's] functional limitations and restrictions due to pain," [Filing No. 10-2, at ECF p. 22].

Other than by stating the general proposition that the ALJ cannot discredit a claimant's testimony because it seems in excessive of the objective medical evidence, Mr. Hall does not articulate a specific reason why the ALJ's foregoing assessment was deficient.  [*See* Filing No. 12, at ECF p. 17.]  The Court has thus not been provided a basis to overturn the ALJ's decision in this respect.  Accordingly, because the ALJ carefully considered Mr. Hall's allegations of pain, the Court cannot find that the ALJ discredited Mr. Hall's testimony solely because his allegations exceeded the objective medical testimony, and reversal is inappropriate.

## IV.
### CONCLUSION

For the reasons stated herein, the ALJ's denial of relief is **AFFIRMED**. Judgment shall issue accordingly.

05/13/2014

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**